(43 App. Div. 388.)

COOK v. WHITE et al.

(Supreme Court, Appellate Division, Second Department. October 3, 1899.)

1. WILLS—ACTION TO ESTABLISH VALIDITY—EVIDENCE.

Under Code Civ. Proc. § 2617, providing that, when a will propounded for probate is opposed, due notice of the hearing of the objections to it shall be given "to all persons who would take any interest in any property" under it, "and any decree in the proceeding shall not affect the right or interest of any such person unless he shall be so notified," a surrogate's decree admitting a will to probate is prima facie evidence of its due attestation, execution, and validity, as against one who is both a legatee and heir at law of the testator, and participated in the contest on the hearing of the objections to the will before the surrogate, although no notice of such hearing was served upon him.

2. SAME.

In an action to establish the validity of a will and codicil which had been admitted to probate, the evidence of the contestant showed that the

testatrix, who was very intemperate, executed a will at a hospital about a year before her death. In the afternoon of the day it was executed she was stupid as if under the influence of liquor, and the execution took place in the evening. The lawyer who drew the will testified that she was then competent and conscious, and that she alone directed the disposition of her property. The codicil, which was executed about 11 months later, ratified the will as previously executed, except as modified by it. No evidence was produced as to her condition when the codicil was executed. *Held,* that the evidence did not sufficiently rebut the presumption of due attestation, execution, and validity of the will and codicil to raise an issue of fact for the jury.

3. SAME—EFFECT OF RATIFICATION BY CODICIL.
    The execution and publication of a codicil ratifying a duly executed and attested will operate as a republication of such will.

Appeal from trial term.

Action by Sarah Cook against Joseph White and others to establish the validity of a will. From a judgment for plaintiff entered on a directed verdict, defendant White appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, HATCH, and WOODWARD, JJ.

Francis A. McCloskey, for appellant.
Charles J. Belfer, guardian ad litem, for infant defendants.
William N. Dykman, for respondents.

CULLEN, J. The will of Jane Cunningham having been admitted to probate by a decree of the surrogate of the county of Kings, this action was brought by a legatee named in the will, under section 2653a, Code Civ. Proc., to establish and affirm its validity. At the close of the evidence the court directed the jury, in answering the questions propounded to it, to sustain the will. From the judgment entered on the verdict so directed, this appeal is taken.

On the trial the appellant took a number of exceptions to the rulings of the court on the formation of the jury. These exceptions have been argued quite elaborately on this appeal. We cannot see their relevancy, for, since the verdict was directed by the court, it was not the result of the voluntary action of the jury, and the alleged bias of any juror would seem wholly immaterial. Every juror was obliged to comply with the direction of the court, apart from his personal views on the questions before him. The power and duty of the judge presiding at the trial of an action of the character of the one before us to direct a verdict where there is no substantial conflict of evidence, or the evidence is insufficient, to the same extent as in other civil actions, has been expressly decided by the court of appeals in Hawke v. Hawke, 146 N. Y. 366, 41 N. E. 89, where that court affirmed the decision of the general term of this court in the Third department. 82 Hun, 439, 31 N. Y. Supp. 968. By the section of the Code cited the decree of the surrogate admitting the will and codicil to probate is prima facie evidence of their due attestation, execution, and validity, and the question presented is whether the evidence of the contestants sufficiently rebutted this presumption to raise an issue of fact to be passed on by the jury. Before discussing this question, however, there is to be noticed an objection raised by

the appellant to the admission in evidence of the decree of the surrogate.

The testatrix's only next of kin and heirs at law were her brother, the appellant, Joseph White, and the children of a deceased sister. The will gives legacies to these parties, but disposes of the bulk of her estate to other persons. The heirs at law and next of kin were cited to appear on the probate of the will and codicil. White appeared and opposed the probate. No notice of the hearing of the objections to the will was given. Section 2617 of the Code provides:

"And in case the will propounded for probate is opposed, due and timely notice of the hearing of the objections to the will shall be given, in such manner as the surrogate shall direct, to all persons in being, who would take any interest in any property, under the provisions of the will, and to the executor or executors, trustee or trustees named therein, if any, who have not appeared in the proceeding, and any decree in the proceeding shall not affect the right or interest of any such person unless he shall be so notified."

The learned counsel for the appellant contends that under the terms of this section the surrogate's decree was not competent evidence to any extent against Mr. White, because of the failure to give him notice of the hearing. We think this claim is based on a misconception of the object and effect of the statute. The appellant, White, occupied a double relation in the probate proceedings. As an heir at law and one of the next of kin, his interest was adverse to the probate of a will which would deprive him of inheriting as in case of intestacy; as a legatee under the will, his interest was to support it. Ample provision is made in section 2615 of the Code for citing all the heirs at law and next of kin. The object of section 2617 is not to protect the rights of the next of kin or heirs at law, but those of a legatee or devisee under the will, who, but for the provisions of this section, might have no knowledge of the pendency of a proceeding in which a decree might be made rejecting a will in his favor. But in this case the will was admitted to probate. The decree of the surrogate was not adverse to the appellant as legatee, but to the appellant as heir at law and next of kin. If by the failure to give the appellant notice of the hearing a decree would not be binding against the appellant in his capacity as legatee, that fact cannot inure in any respect to his advantage in his capacity of heir at law and next of kin. The objection is wholly technical, for, as the appellant was the principal contestant before the surrogate, he, of course, not only had notice of the proceedings on the contest, but was a participant in them; and both the decree of the surrogate and that now before us are in his favor, so far as he is a legatee. The objection discussed is not well taken.

The only evidence given by the contestants in their attack on the will and codicil in suit tended to show that the testatrix was very intemperate, and at times became grossly intoxicated. The will was executed on Christmas Day of 1895. The testatrix was a widow, and since the decease of her husband had lived without other family than a servant. Four days before the execution of the will she went to St. Mary's Hospital (an institute for women), and continued to remain there until her decease on November 5,

1896. Her previous relations with the sisters who maintained the hospital were somewhat intimate, and, from her declarations made to some of the contestants' witnesses, it seems she had in earlier wills made some provision in favor of either the hospital or the sisters. These wills do not appear in evidence. The brother and the plaintiff, Mrs. Cook, who had been a servant with the testatrix until she went to the hospital, visited her at that place during the afternoon of Christmas Day. Their testimony tends to show that at the time of their visits the testatrix was stupid, as if under the influence of liquor, though they did not see her drink. The will was prepared and executed in the evening. The only witness who testified to that transaction was Mr. Kuhn, the lawyer who drew the will, and who was called by the contestants. His testimony is to the effect that at the time of his interview with the deceased she was entirely competent and conscious, that he received from her all the directions for the disposition of her property, and that at the conversation he and the testatrix were entirely alone. The codicil was executed on the 16th day of October, 1896. This codicil refers to the previous will by date, revokes certain legacies and gives others, and concludes by ratifying and confirming the will as previously made, except as modified by the codicil. No evidence whatever was produced by the contestants as to the condition of the testatrix at the time of the execution of the codicil. While the evidence shows that intermediate the execution of the will and the codicil the testatrix had indulged in the excessive use of liquor, yet she was competent to do business and was of sound mind. She drew checks; she went to the bank, though not unattended, and drew money. The law in this state is well settled as to the capacity of intoxicated persons to execute wills or deeds. "A drunkard is not incompetent like an idiot or one generally insane. He is simply incompetent upon proof that at the time of the act challenged his understanding was clouded or his reason dethroned by actual intoxication." Van Wyck v. Brasher, 81 N. Y. 260. "Neither habitual intoxication nor the actual stimulus of intoxicating liquors, at the time of executing a will, incapacitates a testator, unless the excitement be such as to disorder his faculties and pervert his judgment." Peck v. Cary, 27 N. Y. 9. If we assume that the evidence was sufficient to raise an issue as to the condition of the deceased in her competency to make a will on Christmas Day, 1895, there is no testimony whatever to impeach the codicil in October, 1896, which in express terms ratified the original will. "The general doctrine is well settled that a codicil executed with the formalities required by statute for the execution of wills operates as a republication of a will, so far as it is not changed by the codicil." Brown v. Clark, 77 N. Y. 369. "Constructive republication takes place where a testator, for some other purpose, makes a codicil to his will, in which case the effect of the codicil, if not neutralized by internal evidence of a contrary intention, is to republish the will." 1 Jarm. Wills, 157. "Likewise, although if the testator made his will while non compos, and afterwards recover his understanding, the will does not there-

by obtain any force or strength; yet if he should, after having regained a sound state of mind, republish the will made during his former insanity, it would doubtless become a valid will." 1 Williams, Ex'rs (7th Am. Ed.) 267. So, it has been held that, if a testator executes his will under undue influence, and afterwards, free from such influence, executes a codicil thereto, it is a republication, and confirms the will. O'Neall v. Farr, 1 Rich. Law, 80. We have had occasion to recently consider the effect of some late decisions of the court of appeals on the rule, which has always prevailed in England and generally in this country, that extraneous unattested documents may be incorporated into a will by proper reference. See In re Andrews (decided at this term) 60 N. Y. Supp. 141. We have expressed our opinion that since the decisions by the court of appeals in the O'Neil Case, 91 N. Y. 516, the Conway Case, 124 N. Y. 455, 26 N. E. 1028, and the Whitney Case, 153 N. Y. 259, 47 N. E. 272, no testamentary provisions in other unexecuted or unattested papers can in this state be incorporated into a will. Therefore the old doctrine that the execution and publication of a codicil operate as a publication of an earlier inoperative or insufficiently executed or attested will does not now prevail with us in its entirety. Still, the rule is not wholly abrogated. In Brown v. Clark, supra, the original will was properly executed by a single woman. She married, her husband died, and thereafter she made a codicil to the will. It was held that under our statute marriage, per se, revoked the will; but it was also held that the publication of the codicil operated as the publication of a will, which but for the codicil had no legal effect whatever. In commenting on that case the court, in Re Conway, supra, distinguished it from the one then before it, in that the will was executed in conformity with the statute. So we think that the rule of this state, while it excludes unattested or insufficiently attested or published testamentary documents from probate, though referred to in a subsequent properly executed will or codicil, does not prevent such a will or codicil from ratifying or reviving a properly attested instrument which for any reason might be inoperative. It follows that the execution of the codicil in this case confirmed the original will.

The judgment appealed from should be affirmed, with costs. All concur.