(65 App. Div. 58.)

BUCHANAN v. BELSEY.

(Supreme Court, Appellate Division, First Department. November 8, 1901.)

1. WILLS—ACTION TO INVALIDATE—GENERAL VERDICT—SUFFICIENCY.
    Where a will is attacked on several grounds, and a verdict found for plaintiff generally, and it is impossible to tell on which ground the verdict is reached, such verdict will not be permitted to stand, if any one of the grounds is insufficient.

**2. SAME—UNSOUND MIND—QUESTION FOR DECISION.**

Where an action is brought to set aside a will on the ground that testator was of unsound mind, the question for decision is whether, at the time the instrument was executed, testator was capable of making any will at all, and not as to his competency to make the will in issue.

**3. SAME—EVIDENCE—SUFFICIENCY.**

In an action to set aside a will on the ground that testator was of unsound mind, the only evidence as to such unsoundness was of a physician in a hospital to which testator voluntarily went some days after making the will, and his opinion was based on testator's condition while a patient. Several witnesses testified that at the time of making such will there was nothing in testator's state which was not entirely normal, except the natural feebleness of a sick man. *Held,* that a verdict setting aside the will was not sustained by the evidence.

**4. SAME—UNDUE INFLUENCE—EVIDENCE—SUFFICIENCY.**

In an action to set aside a will, it appeared that the principal beneficiary was thousands of miles away when the will was drawn, and there was no evidence of any communication between her and the testator for months. There was no evidence that the lawyer who drew the will, the witnesses thereto, or others present made any suggestions. *Held,* that it was error to refuse an instruction that there was no evidence that would justify a verdict setting aside the will because of undue influence.

**5. SAME—INSANE DELUSION—EVIDENCE.**

Where, in an action to set aside a will which excluded testator's wife and daughters, it appeared that the relations between them and testator were strained, and that they had been ungrateful to him, and the leaving of a merely nominal legacy to them is declared by the will to be in consequence of their ingratitude for many years, such will will not be invalidated on the ground that testator entertained insane delusions as to such contestants' conduct towards him.

Appeal from trial term, New York county.

Action by Margaret P. Buchanan against Kate M. Belsey, individually and as executor of the estate of Alexander Buchanan, deceased. From a judgment in favor of plaintiff, and an order denying a motion to set aside the verdict and refusing to grant a new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

William G. Wilson, for appellant.
William B. Ellison, for respondent.

PATTERSON, J. The plaintiff is the widow of Alexander Buchanan, who died at the Postgraduate Hospital in the city of New York on the 1st day of September, 1896, leaving a last will and testament which, after a contest, was admitted to probate on the 2d day of February, 1899, by the surrogate of the county of New York. In March, 1899, this action was brought, under the provisions of section 2653a of the Code of Civil Procedure, to procure a judicial determination of the validity of the instrument. The procedure at the trial conformed to the requirements of the Code so far as the order of proof was concerned. The party seeking to sustain the will offered it in evidence and rested, whereupon the plaintiff undertook to prove the grounds upon which she relied to invalidate the instrument, and some evidence was then offered by the defendant Belsey (formerly Foster) in rebuttal. There were three separate

grounds upon which the will was attacked: First, that the testator, at the time the alleged will was made, was not of sound mind or memory or in any respect capable of making a will; second, that the execution of the will by the testator was procured by fraud, circumvention, and undue influence, practiced against and upon the said Alexander Buchanan by the defendant Belsey (formerly Foster), the executrix therein named, or some other unknown person or persons; and, third, that provisions of the will virtually excluding the testator's wife and daughters from any participation in the estate of the testator were inspired by insane delusions respecting their conduct towards the testator for some years prior to the execution of the instrument. The case was submitted to the jury on all those issues, and they found a verdict, not specifically that the will was not the last will of the testator, but, as the record shows, simply a general verdict in favor of the plaintiff. Upon that verdict a judgment was entered by which it was "adjudged that the said paper writing, produced and purporting to be the last will of the said Alexander Buchanan, late of the county and city of New York, deceased, is not the last will of the said Alexander Buchanan, deceased; and it is further adjudged that the said decree of the surrogate of the said county of New York, dated and entered the 2d day of February, 1899, admitting the said paper writing to probate, is invalid." The defendant Belsey moved for a new trial under section 999 of the Code of Civil Procedure on all the grounds therein specified, and an order was duly entered denying such motion. From the judgment and order entered this appeal is taken.

From the way in which this case was submitted to the jury, and from the nature and form of the verdict rendered, it is impossible to say upon which of the three grounds of attack upon the will that verdict was reached. If it were upon the ground of general testamentary incapacity of the testator, it is clearly against the weight of evidence. If it were on the ground of undue influence, there is not a syllable of evidence to support it. If it were upon the ground of insane delusions concerning his wife and children, we have, to say the least, grave doubt, in view of the relations continuously existing between the testator and the members of his family from the year 1885, whether the verdict can be sustained on that ground. But, as the verdict may have been rendered on either of the three grounds upon which the will was assailed, it should not be permitted to stand, if either of those grounds was insufficient to nullify that instrument. The jury might have been impressed, as we are, with the inconclusiveness of the evidence offered to defeat the will on the subject of insane delusions, and may have placed their verdict upon a finding of undue influence or of general incapacity of the testator to make a will. It would have been better in this case had specific questions been propounded for the jury to answer, but as the case comes before us we are convinced that the verdict should not stand.

The issue sent to the jury on the subject of the general incapacity of the testator to make a will is entirely independent of the other issues submitted to them. The real question was, not whether the

testator was competent to make the particular will sought to be invalidated, but whether, at the time that instrument was executed, he was capable of making any will at all. "Both at the common law and under the statutes of the state of New York there is a legal presumption that a testator is compos mentis." "The only standard of mental capacity in all who are not idiots or lunatics is found in the fact whether a testator was 'compos mentis,' or 'non compos mentis,' as those terms are used in their fixed legal meaning," and "the burden of proof that the testator is non compos mentis rests on the party who alleges that an unnatural condition of mind existed in the testator." Delafield v. Parish, 25 N. Y. 10. The only legitimate subject of inquiry, therefore, on this branch of the case, was as to the condition of the testator's mind when he executed the will on the 24th of August, 1896; and the only testimony offered to indicate that he was not then of sound mind is that of Dr. Ferguson, who was the attending physician at the Postgraduate Hospital while Alexander Buchanan was under treatment there. That testimony is only a deduction,—in fact, a retroacting opinion, —based upon the condition of the testator while a patient in the hospital from the 28th of August, the day upon which he was admitted, until the 1st of September, the day on which he died. Dr. Ferguson testifies that his diagnosis of the case was that the disease from which the testator suffered was Bright's disease; that he was in the latter stages of it; and that it was his professional opinion that that condition, or those conditions which he discovered, must have lasted for weeks, if not for months, prior to the testator's death. The condition of the testator while in the hospital was, according to the testimony of this physician, such as might have rendered him incapable at that time of making a will, although that is not satisfactorily established. But there is abundant evidence to show that on the 24th of August, when the will was made, and for the four subsequent days, and up to the 28th, when he entered the hospital at his own desire and suggestion, the testator's mind was clear, and that there was nothing in his state which was not entirely normal, except the natural feebleness of a sick man. The testimony of James D. Buchanan, of Mr. Overington, the lawyer, of Dr. Cocke, of Dr. Morrison, and of the testator's niece, Mrs. Wallace, overwhelmingly refutes any inference that might be drawn from the mere opinion of Dr. Ferguson; for, where the opinion of a medical witness is contradicted by the facts, the facts must prevail. If, therefore, the verdict of this jury was predicated upon a finding of general testamentary incapacity, it was absolutely against the evidence before them.

Concerning the issue of undue influence, there was, as said before, nothing whatever in the evidence that would justify a verdict for the plaintiff, and it was clearly error to refuse, as the trial justice did, a request made by counsel for the defendant Belsey (Foster) upon that subject. He asked the court to charge that there was no evidence in the case of any undue influence exercised upon the mind of Dr. Alexander Buchanan to induce him to make the will which he did make, and that there was no evidence in the case of any influ-

ence whatever exercised upon the mind of Dr. Alexander Buchanan to induce him to make the will he did make. The defendant was entitled to those instructions. "Where the evidence is, as a matter of law, insufficient to authorize a finding that the fact in issue is or is not established, it is the duty of the court to so instruct the jury." Burdick v. Freeman, 120 N. Y. 424, 24 N. E. 949. Here, there was nothing to indicate that there was any undue influence, or, in fact, any influence, exercised upon the testator when he executed this will. That undue influence which will invalidate a will must be such importunity or influence as to deprive the testator of the free exercise of his will. That definition, given in Gardiner v. Gardiner, 34 N. Y. 155, has been accepted as stating the true rule applicable to cases of this character, and it has been reiterated with some amplification or elaboration in Society v. Loveridge, 70 N. Y. 394, Brick v. Brick, 66 N. Y. 149, and Coit v. Patchen, 77 N. Y. 533. In the Gardiner Case it is said that that influence which would destroy the free agency of the testator "must be a present constraint operating upon the mind of the testator at the time of the testamentary act." When Alexander Buchanan executed his will on the 24th of August, 1896, Mrs. Belsey (then Foster), the principal beneficiary under the will and the executrix named therein, was thousands of miles away from the testator, and there is no evidence that there was any communication passing between them for some months. Of direct influence, therefore, on her part, there was none; nor is there a single circumstance from which a suspicion can arise that the lawyer who drew the will, or the persons who were witnesses to it, or who were present when it was executed, or James Buchanan, the brother of the testator, or Mrs. Wallace, his niece, made any suggestion with reference to Mrs. Belsey, or to any other person, being the recipient of the testamentary bounty of the testator; nor is there any proof that either of those persons bore any such relation, even of acquaintance to Mrs. Belsey, as would induce them to suggest to the testator, much less importune him, to make any provision for her. Whether, under the form in which the defendant moved for a nonsuit or for a direction of a verdict, the question of the submission to the jury of this issue is properly raised, we need not now consider; for the defendant was entitled to the instructions contained in the requests we have adverted to, and which requests were refused by the trial judge.

Concerning the issue of insane delusions, operating upon the mind of the testator and inducing him to exclude his wife and daughters from a share in his estate, the evidence is in such a state that we are unable deliberately to say that it preponderates in favor of the plaintiff's contention in that regard. If an insane delusion existed and can be traced into the will, of course, it would invalidate that instrument; but that the provisions of the will are unjust, or the result of passion, or of unworthy or unjustifiable sentiments, or of false information, is not sufficient to invalidate it. Clapp v. Fullerton, 34 N. Y. 190, 90 Am. Dec. 681; Dobie v. Armstrong, 160 N. Y. 584, 55 N. E. 302. The relations between this testator and his wife and children were not only strained, but there is evidence to show that

those persons were ungrateful to him.  His leaving each of ·them merely a nominal legacy he declares by his will to be in consequence of their ingratitude shown to him for many years.  Upon the whole testimony, while the record is replete ˙with accounts of unhappy relations existing between the testator and his family, the impression made by reading it is that the wife and daughters of the testator were not blameless in their conduct towards him, and that, although he may have exaggerated their conduct in some respects, and attributed to them persecutions which undoubtedly emanated from some one, and which from various indications he might well have believed came from them, we are not satisfied that it is shown by a preponderance of evidence that the provisions of this will were the result of insane delusions entertained by the testator.

But, apart from the last consideration, we are satisfied that the verdict in this case should not be upheld, and that the judgment and order appealed from should be reversed, and a new trial granted, with costs to appellant to abide the event.  All concur.