CHARLES H. IVISON, Appellant, *v.* DAVID B. IVISON and Others, Respondents, Impleaded with EDWARD IVISON and Others.

*Undue influence which will invalidate a will — what capacity a testator must possess — when in an action to set aside the probate of a will a verdict may be directed for the defendant — in such a case all contested facts are to be treated as established in the plaintiff's favor.*

The undue influence which will invalidate a will is such as deprives the testator of the free exercise of his intellectual powers; it must be a present constraint operating upon the mind of the testator at the time of the testamentary act.

A testator will be deemed to have been a person of sound mind and memory within the meaning and intent of the Statute of Wills, if, at the time he executed the will, he had sufficient active memory to collect in his mind, without prompting, the particulars or elements of the business to be transacted, and to hold them in his mind a sufficient length of time to perceive their obvious relations to each other and be able to form some rational judgment in relation to them.

Evidence that a testator was miserly, eccentric and irrational upon some subjects is not sufficient to establish a want of testamentary capacity, in the absence of proof that he did not know the amount or nature of his property, and who were the natural objects of his bounty, or that he did not fully understand what he was doing when the will was made.

In an action, brought under section 2653a of the Code of Civil Procedure, to set aside the probate of a will upon the ground that the testator lacked testamentary capacity, it is incumbent upon the plaintiff to overcome the legal presumption of the testator's testamentary capacity and the *prima facie* case, which, under the terms of the section, the decree of probate establishes in favor of the defendant, by producing evidence which will justify the jury in finding that the testator lacks testamentary capacity, and, until he has succeeded in doing this, the court is not obliged to submit any question to the jury, but may direct a verdict in favor of the defendant.

Upon an appeal from a judgment entered upon a verdict directed by the court in such a case, the appellant is entitled to the most favorable inferences deducible from the evidence and all contested facts are to be treated as established in his favor.

HATCH, J., dissented.

APPEAL by the plaintiff, Charles H. Ivison, from a judgment of the Supreme Court in favor of the defendants, David B. Ivison and others, entered in the office of the clerk of the county of New York on the 28th day of March, 1901, upon the verdict of a jury rendered by direction of the court, and also from an order entered in said clerk's office on the 27th day of April, 1901, denying the plaintiff's motion for a new trial made upon the minutes.

*A. C. Wade,* for the appellant.

*Charles N. Judson,* for the respondents David B. Ivison and M. A. Sheridan.

*E. H. Benn,* for the respondent Eliza J. Seelye.

MCLAUGHLIN, J. :

On the 30th of May, 1896, William Ivison, upwards of eighty years of age, died leaving a last will and testament, which, after a contest, was admitted to probate by the surrogate of the county of New York and letters testamentary were issued to the executor therein named. The testator left him surviving no widow or children, his heirs at law consisting of numerous nephews and nieces. He gave the greater part of his estate to his nephew, David B. Ivison. The plaintiff, another nephew, feeling aggrieved, brought this action under section 2653a of the Code of Civil Procedure to test the validity of the will, charging, in substance, that the same was invalid in that it was procured by undue influence and that the testator at the time it was executed did not have testamentary capacity. At the trial, after both parties had rested, a verdict was directed sustaining the will, and from the judgment thereafter entered plaintiff has appealed.

By the terms of the section of the Code under which the action was brought, the decree of the surrogate admitting the will to probate is *prima facie* evidence of its due attestation, execution and validity (*Cook* v. *White,* 43 App. Div. 388; *Heath* v. *Koch,* 74 id. 338; S. C. affd., 173 N. Y. 629), and the burden of overcoming the same is upon the one asserting the invalidity. (*Dobie* v. *Armstrong,* 160 N. Y. 584.)

It seems unnecessary to review at length the facts set out in the voluminous record. Concerning the issue of undue influence, no

evidence whatever was produced which would have justified a verdict for the plaintiff, and, therefore, when the motion was made for the direction of a verdict, so far as this issue was concerned, the court could not do otherwise than grant it.   Undue influence which invalidates a will is such as deprives the testator of the free exercise of his intellectual powers.   (*Buchanan* v. *Belsey*, 65 App. Div. 58.) It must be " a present constraint, operating upon the mind of the testator at the time of the testamentary act." (*Gardiner* v. *Gardiner*, 34 N. Y. 155.)   Here there was no evidence that there was any undue influence, or, in fact, any influence whatever exercised upon the testator when he executed his will.   He selected the subscribing witnesses himself, going to their office for the purpose of having them act as such.   Nor do we understand that appellant's counsel seriously contends that there was sufficient evidence adduced at the trial to justify a finding that undue influence was exercised over the testator.   He attacks the judgment principally upon the ground that there was sufficient evidence to go to the jury upon the question of testamentary capacity, and, in support of this contention, our attention is called to testimony to the effect that the testator was eccentric, if not irrational, upon some subjects; that he was extremely fond of money; that he would at times take his bonds or other securities and spread them upon the floor ; then, taking up one of them, would kiss it and call it his God.   At times, when he had several thousands of dollars to invest, he would express fear of becoming an object of charity ; that he disliked persons who rode a bicycle; that he hated poor people, and once threatened to strike a person asking alms, and, at another time, put one out of a room where he happened to be ; that on an occasion when he was being shaved, he got out of the chair with his face partially covered with lather for the purpose of driving an organ grinder away ; that when his wife died, which was a few months before his own death, he showed excessive grief, and at times thereafter said he saw her in the air, looking like an angel ; that he threw kisses at her, and signified a desire to die, so that he might be with her ; that prior to her death they frequently quarreled, he insisting that she should buy her summer hats in the fall and her winter hats in the spring, because she could buy them cheaper, and that after her death, and before her burial, he tried to sell her sealskin cloak.   But in opposi-

tion to these and possibly other curious and eccentric acts upon the part of the testator, it appeared that he started life comparatively poor, and by thrift, industry and good business judgment accumulated a very substantial fortune, having at the time of his death upwards of $700,000 ; that he invested his money with great shrewdness and managed his property with marked ability ; that he lived at expensive hotels, kept horses, and gave his wife valuable jewelry ; that he had some reason for disliking poor people, and especially some of his relatives ; that he talked with people about how he intended to dispose of his property, and particularly with his attending physician, before the will was made ; that he stated how he was going to make his will and assigned reasons for it, and after he had made his will he told the physician and others what he had done and how he had disposed of his, property.

The appellant, of course, is entitled upon the appeal to the most favorable inferences deducible from the evidence and all contested facts are to be treated as established in his favor ( *Waldron* v. *Fargo,* 170 N. Y. 130), and if it be assumed, as it must be under this rule, that the testator did what the testimony of the plaintiff tended to show he did — that he was eccentric, and upon certain subjects irrational — that fell far short of his sustaining the burden which rested upon him, viz., of showing that at *the* time the will was made the testator did not have testamentary capacity.    To establish that fact it was necessary to produce proof which would have justified the jury in finding that the testator, at the time he made his will, did not know what property he had or how he desired to dispose of it.    (*Delafield* v. *Parish,* 25 N. Y. 10 ; *Matter of Martin,* 98 id. 193 ; *Dobie* v. *Armstrong,* 160 id. 584.)

In *Delafield* v. *Parish* (*supra*) it is stated that a person to have testamentary capacity must " have sufficient active memory to collect in his mind, without prompting, the particulars or elements of the business to be transacted, and to hold them in his mind a sufficient length of time to perceive at least their obvious relations to each other, and be able to form some rational judgment in relation to them.    A testator who has sufficient mental power to do these things is, within the meaning and intent of the Statute of Wills, a person of sound mind and memory, and is competent to dispose of his estate by will."

This rule has many times been approved by the Court of Appeals, and has been, so far as I am aware, universally adopted in this State. If applied to all of the testimony offered by the plaintiff, it at once becomes apparent that there was no evidence which would have justified the jury in finding the will invalid, or, in other words, there was nothing to overcome the *prima facie* case made in favor of the will by the decree of the surrogate admitting it to probate. The general effect of the plaintiff's testimony is simply that the testator was miserly, eccentric and irrational upon some subjects, but there is an entire absence of evidence that he did not know what property he had, who were the natural objects of his bounty, or that he did not fully understand what he was doing when the will was made. The answer of the medical experts to the hypothetical question that the testator did not have testamentary capacity was not of itself sufficient to justify a finding that at *the time* the will was executed the testator did not know what he was doing. On the contrary, it appears beyond dispute that he fully comprehended what he was doing when he made his will.

The burden of proving lack of testamentary capacity, as already indicated, rested upon the plaintiff. The law not only presumed that the testator had such capacity, but the decree admitting his will to probate, *prima facie*, established that fact. This presumption, coupled with the *prima facie* case of the party in favor of sustaining the will, had to be overcome before there was any question to submit to the jury. It was not overcome, and, therefore, the verdict was properly directed. This, as I understand it, is precisely what was held in *Dobie* v. *Armstrong* (*supra*). There, as here, a verdict was directed at the close of the testimony and the ruling of the trial court was sustained on appeal, the court saying: " The trial court was not required to submit the question of the testator's mental capacity to the jury merely because some evidence had been introduced by the party bearing the burden of proof. * * * The Legislature never could have intended and the statute does not compel the construction, that courts should hold that every case which is brought under section 2653a of the Code must be submitted to the arbitrament of a jury. * * * Their verdict should proceed upon such evidence as would warrant the court, in its review of the facts, in holding that it actually tended to prove

such mental unsoundness in the testator, when proceeding to make a testamentary disposition of his property, as by reason of the existence of some delusion to render him incapable of forming a judgment as to the condition of his property ; or of apprehending his true relations to the person whom his will deprives of the share in the estate, which was reasonably or naturally to have been anticipated. Such cases are fraught with the gravest consequences and I do not believe that a solemn testamentary disposition of property should be left to the decision of a jury upon mere surmise or upon inferences from facts which are as consistent with the one view as with the other."

Upon the whole case, therefore, I am of the opinion that a question of fact was not presented at the trial, for which reason the court properly directed a verdict, and that the judgment is right and should be affirmed.

Judgment and order affirmed, with costs.

VAN BRUNT, P. J., and INGRAHAM, J., concurred; HATCH, J., dissented.

O'BRIEN, J. (concurring):

I concur in result. The rule in *Dobie* v. *Armstrong* (160 N Y. 584) has been modified by *McDonald* v. *Metropolitan Street R. Co.* (167 id. 66), as pointed out by this court in the recent case of *Philips* v. *Philips* (77 App. Div. 113), wherein we held : "Upon the law as now authoritatively laid down by the Court of Appeals, therefore, a verdict cannot be directed for a plaintiff or defendant, no matter how great the weight or preponderance of evidence may be in his favor, where, on the other side, evidence has been given which presents an issue of fact, and upon which the jury could properly proceed to find a verdict."

We then discussed the evidence presented by the plaintiff and reached the conclusion that it was not of such a character, regarded separately and apart from that of the defendant, as would justify its submission to the jury. Similarly, in this case, I think that the plaintiff failed to present evidence "upon which the jury could properly proceed to find a verdict," and that the court was, therefore, warranted in directing a verdict in favor of the defendant.

HATCH, J. (dissenting) :

If we are to follow the rule announced in *McDonald* v. *Metropolitan Street R. Co.* (167 N. Y. 66) which we have held applicable to this class of cases (*Philips* v. *Philips*, 77 App. Div. 113), then I think that the appellant in this case presented a question of fact which required its submission to the jury for their determination. The question does not now rest upon the weight of the testimony, but bears solely upon whether there was any question of fact for the jury. It seems to me that the evidence was sufficient upon the question of the testator's testamentary capacity to call for its submission to the jury within the rule of these cases.

The judgment should, therefore, be reversed and a new trial granted.

Judgment and order affirmed, with costs.