# Matter of Proving the Last Will and Testament of ABBY STRONG, Deceased.

(Supreme Court, Schenectady County, July, 1916.*)

Wills— action to determine validity of — trial — evidence — codicil — undue influence — when verdict in favor of proponents directed — Code Civ. Pro. § 2538.

Where in an action under section 2538 of the Code of Civil Procedure to determine the validity of a last will the jury is unable to agree, the court has power to direct a verdict.

Upon the trial of such an action it was conclusively shown that the codicil to the will was executed with all the formalities required by statute and there was no sufficient evidence of undue influence to justify the submission of that question to the jury, and while the testimony disclosed many odd, unnatural and irrational acts of testatrix these acts were not continuous, and it was established beyond dispute that during many and long periods subsequent to the time the codicil was executed testatrix was entirely rational and of full understanding mind. Not only was there no evidence from which an inference could be drawn, at least by a layman, that testatrix was in an incompetent condition on October 20, 1910, the day she executed the codicil, but it was conclusively established that from October 16, 1910, until after October 20, 1910, she was in her normal and rational state of mind, conversant with her affairs and competent to look after them. Each of the subscribing witnesses, one of whom was a physician, relating in substance what occurred at the time of the execution of said codicil, testified that testatrix at that time was competent. Of four alienists called to testify as to her condition on that day two stated that in their opinion she was competent and the other two that she was incompetent. The question directed by the surrogate to be tried in the action was whether at the time of making said codicil testatrix was of sound mind and memory and capable of making the instrument. The jury disagreed and upon the court entertaining a motion by proponents for the direction of a verdict it was stipulated by the parties before the jury

---

* Received too late for insertion in proper place.— [REPR.

was discharged that the motion might be retained and that
the court might direct a verdict in all respects as if the jury
were present, whereupon the jury was discharged. *Held,* that
the court having power to direct a verdict should do so and
that accordingly a verdict in favor of proponents will be
directed, establishing the validity of the will and codicil.

ACTION under section 2538 of the Code of Civil Procedure to determine the validity of a will.

Edgar T. Brackett, William E. Bennett, Arthur King and E. D. Cutler, for proponents.

John D. Miller and Daniel Naylon, Jr., for contestants.

VAN KIRK, J. This action was tried in pursuance of an order of the surrogate of Schenectady county. Four questions were ordered to the Supreme Court under the provisions of section 2538 of the Code of Civil Procedure. At the close of the evidence a motion was made by the proponents for the direction of a verdict, but the questions were submitted to the jury. The jury reported that they were unable to agree, when the proponents renewed their motion for a direction of a verdict. The court entertained the motion, and it was then stipulated by the parties and before the jury was discharged from its consideration of the case that the motion might be retained; and, if the court should conclude so to do, that it might direct a verdict in all respects as if the jury were present. Thereupon the jury was discharged.

The court has the power to direct a verdict. Section 2538 of the Code of Civil Procedure provides for the trial by jury: "In any proceeding for the probate of a will in which any controverted question of fact arises, the surrogate * * * must direct that such trial be had" either in the Surrogate's Court or in

the Supreme or County Courts. " If the trial shall not take place in the surrogate's court the order must state distinctly and plainly each question of fact to be tried, and shall be the only authority necessary for the trial of such question." In 1892 section 2653a of the Code was enacted, directing in what manner the validity of a will could be tried before a jury and an action brought by any person interested as devisee, legatee or otherwise. In that section is this language: " It (the issue) shall be tried by a jury and a verdict thereon shall be conclusive." It was claimed under that section that the court had not authority to direct a verdict; but in *Hawke* v. *Hawke,* 82 Hun 439; affd., without opinion, 146 N. Y. 366, it was held that the court had the same power, duty and control in the trial as in the trial of other actions; and said, quoting from 20 N. Y. 70: " The duty of the judge presiding at the trial is the same in this class of cases as in others; it is to determine whether a case is presented fit for the deliberation of the jury." This construction of section 2653a was uniformly followed and is undoubtedly the construction that should be put on the above section of the Code of Civil Procedure.

The court may direct a verdict after the case has been once submitted to a jury and it has reported its inability to agree and before the jury is discharged. *Rainger* v. *Boston Mutual Life Association,* 167 Mass. 109; *Heath* v. *Jaquith,* 68 Maine, 433; *McDonald* v. *Metropolitan St. R. Co.,* 46 App. Div. 143, 145; reversed on other grounds, 167 N. Y. 66; *Butler* v. *Supreme Council,* 43 App. Div. 531. In the last case the trial court had submitted the question to the jury, which, after being out some time, reported that it was unable to agree. The court then announced that it would dismiss the complaint, to which the plaintiff's attorney duly excepted and an appeal was taken. Judge Wood-

ward says, on page 532: '' While the proceeding on the part of the learned trial court was somewhat extraordinary, there does not appear to be any good reason why the court could not grant the motion of the defendant for the direction of a verdict or a dismissal of the complaint at any time before the jury had acted, if the evidence was not sufficient to justify a verdict for the plaintiff.''

The court should direct a verdict in this case. In *Linkhauf* v. *Lombard*, 137 N. Y. 426, the Court of Appeals said: '' The rule should be regarded as settled, under all the authorities, as well by the decisions of the courts of this state as by those of England, that, where there is no evidence upon an issue before the jury, or the weight of the evidence is so decidedly preponderating in favor of one side, that a verdict contrary to it would be set aside, it is the duty of the trial judge to non-suit, or to direct the verdict, as the case may require;'' citing a number of cases, among them *Dwight* v. *Germania Life Ins. Co.*, 103 N. Y. 341. *Dobie* v. *Armstrong*, 160 N. Y. 584, is the leading case as to the direction of a verdict in will cases. It holds that the trial court is not required to submit the testator's mental capacity to the jury merely because there was some evidence of incapacity. ''A solemn testamentary disposition of property should not be left to the decision of a jury upon mere surmise, or upon inferences from facts, which are as consistent with one view as with the other;'' citing *Linkhauf* v. *Lombard*, and quoting the rule above stated. The decision of the Appellate Division in *Hagan* v. *Sone*, 68 App. Div. 60, was reversed (174 N. Y. 323), where Judge O'Brien, writing for the court, says: (p. 319): '' If there was no evidence, or if there was merely a scintilla, then the ruling of the learned trial judge was correct and should be sustained, but if, on the con-

trary, there was some proof in support of the allegations of the complaint, or which tended in that direction, then the case should have been decided by the jury as one of fact and not by the court as one involving only the question of law." The conclusion reached by Judge O'Brien is: " When evidence is given of such a character that different inferences may fairly and reasonably be drawn from it, the fact must be determined by the jury." *McDonald* v. *Metropolitan St. R. Co.*, 167 N. Y. 66, has been recognized as re-establishing the " scintilla of evidence " rule; and it has been applied especially in negligence cases. The trial courts and the Appellate Division had generally accepted this as a modification of the rule stated in the *Linkhauf* case. In *Pettit* v. *Pettit*, 149 App. Div. 485, 488, the court said: " Upon the question of whether the testator had testamentary capacity at the time the will was executed it may be, under the doctrine of *McDonald* v. *Metropolitan St. R. Co.* (167 N. Y. 66) and *Hagan* v. *Sone* (174 id. 317), that the case had to be submitted to the jury, but its finding that he did not have testamentary capacity is, I think, clearly against the weight of evidence." In *Philips* v. *Philips,* 77 App. Div. 113, 115, Judge O'Brien in the first department, after referring to *Dobie* v. *Armstrong,* says: "And the conclusion reached in that case was that the evidence produced by the contestant ' was not of a nature that the jury could have properly proceeded to find a verdict upon it in his behalf, and, further, that, if such a verdict had been rendered, it could not have stood the test of a motion addressed to the court to set it aside.' The force of this last statement had been destroyed by the later case of *McDonald* v. *Metropolitan St. R. Co.* (167 N. Y. 66)." But in *Matter of Case,* 214 N. Y. 199, the Court of Appeals has corrected this wrong impression.    On page 203, Judge Car-

dozo, speaking for the court, says: "It is true that where conflicting inferences may not unreasonably be drawn, the weight of evidence is not for consideration in this court. It is still the rule, however, even in this court, that ' insufficient evidence is, in the eye of the law, no evidence ' (*Pollock* v. *Pollock,* 71 N. Y. 137, 153; *Laidlaw* v. *Sage,* 158 N. Y. 73, 94; *Fealey* v. *Bull,* 163 N. Y. 397, 402). In the words of Maule, J., in *Jewell* v. *Parr* (13 C. B. 916), ' When we say that there is no evidence to go to a jury, we do not mean that there is literally none, but that there is none that ought reasonably to satisfy a jury that the fact sought to be proved is established.' * * * Rightly read, the case of *McDonald* v. *Met. St. Ry. Co.,* (167 N. Y. 66), holds nothing to the contrary." In *Laidlaw* v. *Sage,* so cited, Judge Martin, who also wrote the opinion in the *McDonald* case, quotes extensively from the *Linkhauf* case. Judge Cullen, in *Fealey* v. *Bull, supra,* in discussing the direction of a verdict, says: " There must be not only some evidence, but the evidence must be sufficient in its nature to warrant the court in submitting a cause to the jury. * * * But the rule also applies to cases of direct evidence. The testimony of a witness may be in such contradiction of matters of common knowledge, or the laws of nature, as to be incredible as a matter of law." In the *Linkhauf Case, supra,* 425, the court said, quoting from *Improvement Company* v. *Munson,* 14 Wall. 442, as follows: " Nor are judges any longer required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party. Formerly it was held that if there was what was called a scintilla of evidence in support of a case, the judge

was bound to leave it to the jury; but recent decisions of high authority have established a more reasonable rule; that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof rests.'' Since the decision in *Matter of Case,* I believe the rule first above quoted from the *Linkhauf* case, and applied in *Dobie* v. *Armstrong,* is the approved rule in this state in probate cases, and the application of that rule in *Dobie* v. *Armstrong* is now unquestioned.

The question directed by the surrogate to be tried, which is for consideration here, is: '' Was the said Abby Strong, at the time of the making of the said paper propounded as a codicil to her will, which paper bears date of the 20th day of October, 1910, of sound mind and memory and capable of making such codicil?'' Omitting now from consideration the testimony of the experts, it seems to me plain that there is not any evidence which requires this question to be submitted to the jury. While the evidence discloses many odd, unnatural and irrational acts of Abby Strong, these acts are not continuous, and it is established beyond any dispute that, during many and long periods, subsequent to the time this will was executed, she was entirely rational and of full understanding mind; and there is absolutely no evidence in the case from which it could be inferred at least by a layman that, on October twentieth, she was in an incompetent condition. '' A drunkard is not incompetent like an idiot or one generally insane. He is simply incompetent upon proof that at the time of the act challenged his understanding was clouded or his reason dethroned by actual intoxication. *Peck* v. *Cary,* 27 N. Y. 9.'' *Van*

*Wyck* v. *Brasher,* 81 N. Y. 260. The evidence establishes affirmatively and without any dispute better than a surmise that, from the sixteenth of October until after the twentieth of October, Abby Strong was in her normal and rational state of mind, conversant with her affairs and competent to look after them. While the evidence may justify, as a fair and reasonable inference, a finding that she was incompetent during the "spells," it does not fairly and reasonably justify an inference that she was generally insane or incompetent. See *Cook* v. *White,* 43 App. Div. 388, 391. The two subscribing witnesses, Mr. Lyon and Dr. Vanderbogert, each testified that she was competent. They related, not in much detail, what had occurred at the time the codicil was executed, but perhaps in as much detail as men could recall five years after an event. Abby Strong was in her bed when the witnesses went to the room. She was asked if she would have a book on which to sign the paper, and she said, No, she would get up. She did get up from her bed, went to the table and signed the instrument in her usual natural hand, and all the formalities for the execution of the codicil were performed. Dr. Vanderbogert had been her physician for a considerable time, although he had apparently not constantly attended her for a few months prior to October twentieth. Dr. Vanderbogert, according to an entry in Dr. Pierson's appointment book, attended her the same day in consultation with Dr. Pierson, and being present at the time of the execution of the codicil in the evening he positively testifies that at the time she was competent. Drs. Lamb and Mosher, alienists, in answer to a hypothetical question, which recited with great fullness the story made in the evidence, including not only the odd and unusual acts of Abby Strong, her failures of memory, her repetition of stories, her spells, her physical

ailments, but also the other side of the picture as related by witnesses called by the proponents, stated that in their opinion she was of sound mind on October twentieth. Drs. Scott and Pashayan were called by the contestants. The hypothetical question asked them did not include the great body of the proponents' testimony, which had not yet been put in the case. The question was chiefly confined to those acts and conversations of Abby Strong, which had been denominated by the witnesses as irrational, and her physical ailments. In answer to such question, each stated in his opinion she was incompetent at the time she made her codicil; and Dr. Scott at least testified that, in answering the question, he assumed that, in all other acts and conversations of her life, she was rational. It is conceded that, in 1906, when she made her will, she was competent. If she was incompetent on October 20, 1910, it was because she had then come into a permanently enfeebled condition of mind. The recitals in the hypothetical question to the contestants' experts might give the impression that the irrational acts and sayings and evidences of an enfeebled condition were continuous, when, in fact, they were distributed through a period of nine or ten years. The spells, so called, were more frequent in 1910 and during and following the last illness of her sister Jerusha. Later in her life they were not so frequent. When we consider that many witnesses, entirely credible and intelligent, have shown that, in many periods of time, up to the end of 1913, she was competent and rational, we seem to have a complete answer to any contention that her mind was permanently impaired as early as 1910. So that, unless the fact that two alienists have testified that she was incompetent on the evening of October 20, 1910, requires the submission of the question to the jury in any event, the court should direct a verdict.

Supreme Court, July, 1916.          [Vol. 99.

There are expressions of our courts with regard to the testimony of experts based upon hypothetical questions, stating that their credibility and the weight of their testimony are for the jury (*Heyser* v. *Morris,* 110 App. Div. 313); and at the same time there are many cases reported in which verdicts have been directed sustaining a will where experts have testified that the testator was incompetent. *Dobie* v. *Armstrong,* 27 App. Div. 520; 160 N. Y. 584; *Hawke* v. *Hawke,* 82 Hun, 439; affd., 146 N. Y. 366; *Philips* v. *Philips,* 77 App. Div. 113. The testimony of experts, who have not seen the testator and whose opinions are based upon hypothetical questions, is of the weakest and most unsatisfactory character. *Phillips* v. *Chater,* 1 Dem. 533, 546. In *Byrne* v. *Byrne,* 109 App. Div. 476, 480, it is said: "Differing from us, the Court of Appeals in *Hagan* v. *Sone* (174 N. Y. 319) expressly held that expert evidence of the character introduced in this case was admissible and should have been left to the jury for their consideration, saying that the value and bearing of the evidence, as well as its construction, is for the body to which is committed the decision of all questions of fact." This should not be taken as a holding that in all cases the testimony of experts must be submitted to the jury. Judge O'Brien, in *Hagan* v. *Sone,* refers to *Dobie* v. *Armstrong,* but does not criticize the holding of the court there in sustaining the direction of the verdict, though in conflict with the expert testimony. He does refer to expert evidence and says in that case it was of a character to be submitted to the jury, but does not suggest that in all cases it should be. And Judge O'Brien does say, after referring considerably to the evidence, this: "We express no opinion as to the merits of the case, or as to the weight or value of the evidence. We only say

that in our opinion there was some evidence which should have been submitted to the jury, since it tended to support the allegations of the complaint. Wills are not to be set aside by juries except for the gravest reasons. A person has the right to dispose of his property in such way and to such persons as he thinks best. It is only in a case where there is substantial proof of mental incapacity or of undue influence, that courts *or juries* may annul his testamentary act." In *Philips* v. *Philips, supra;* affd., without opinion, 179 N. Y. 585, the plaintiff produced three medical experts, upon which he relied as presenting a *prima facie* case showing testamentary incapacity; still, after apparently holding that the rule of *Dobie* v. *Armstrong* had been changed by *McDonald* v. *Met. St. Ry. Co.,* the court says: " It appeared without contradiction that the opinions of the experts, upon which the plaintiff's case rested, resulted from an erroneous diagnosis and the erroneous assumption of facts, which destroyed the probative force of such opinions and left the plaintiff's case barren of any evidence sufficient to justify the submission of the issue of fact to the jury as to the testator's mental incapacity." And he says: " The mere opinions of expert witnesses based upon an erroneous hypothesis cannot prevail as against facts when testified to, as in this case, by a great number of competent observers. *Buchanan* v. *Belsey,* 65 App. Div. 62; *Delafield* v. *Parish,* 25 N. Y. 29; *Hagan* v. *Sone,* 68 App. Div. 60." In *Griswold* v. *N. Y. C. & H. R. R. R. Co.,* 115 N. Y. 64, Judge Finch said: " Medicine is very far from being an exact science. At the best, its diagnosis is little more than a guess enlightened by experience. * * * and the wisest physician can do no more than form an opinion based upon a reasonable probability." In *Pettit* v. *Pettit, supra,* 490, Judge

McLaughlin said, after reciting certain reasons why the testator was competent: " One who has such intelligence, has testamentary capacity (*Delafield* v. *Parish*, 25 N. Y. 9; *Matter of Martin*, 98 id. 193; *Dobie* v. *Armstrong, supra; Ivison* v. *Ivison*, 80 App. Div. 599), and the proof of experts based upon a hypothetical question in opposition to proof showing such intelligence, scarcely, if at all, raises an issue for a jury."

The answer of the contestants' experts to the hypothetical question in the form in which it was made, not reciting the evidence as to the many times later when Abby Strong was apparently of normal mind, and the fact that neither of the physicians testified that, in their opinion, she had come to a condition of continuous mental incompetency prior to October, 1910, seems to me to show that the answers of the experts resulted from an erroneous assumption of facts which destroyed the probative force of their opinions. Abby Strong had sufficient intelligence to look after her own affairs until the end of 1913. She knew who her relatives were; and though, at times, she did not identify them by name, yet, as soon as she was reminded, her conversations always showed full comprehension. She knew what her property was and took care of it, receiving interest and giving proper receipts therefor. She purchased supplies for the house and ordered repairs; she paid her bills, and did her own business generally. She made a codicil which was in harmony with the acts of her life; she made her bequests to those to whom she had often contributed during her life. Considering the distant relationships, having none closer than second cousins, her codicil was not an unnatural codicil. The disposition is of the same character as that in her will, which is concededly valid. She made her codicil about six months after the decease of her sister and then allowed that codicil to stand for five

years before her death, during most of which period
she was looking after her own affairs and frequently
during which period she made gifts of money to those
same institutions and for those same purposes which
she remembered in her codicil. It seems to me that
a person who has such intelligence as it was disclosed
that she had at all times except when suffering from
spells has testamentary capacity, and that the ques-
tion whether she has or not should not be left to sur-
mise. While juries are permitted to draw reasonable
inferences from facts shown to exist, those inferences
may not be mere guesses or surmises, and I am unable
to recall any evidence, from which, by anything better
than a guess, it could be found that, on October 20,
1910, she was incompetent to make a will. '' To per-
mit a jury to speculate and surmise upon a question
of responsibility (mental capacity) is to withdraw
from the litigant a safeguard intended for the protec-
tion of his rights. He is entitled to the judgment of
the courts upon questions, to which the character of the
evidence admits of but one answer. No such possi-
bilities of a failure of justice should be countenanced.''
*Linkhauf* v. *Lombard, supra,* 425. The final words of
Judge Gray in *Dobie* v. *Armstrong* are alike applica-
ble to this case: '' I think that the evidence produced
by the contestant was not of a nature that the jury
could have properly proceeded to find a verdict upon it
in his behalf and, further, that, if such a verdict had
been rendered, it could not have stood the test of a
motion addressed to the court to set it aside.'' The
same reasoning of Judge Cullen in *Cook* v. *White,
supra,* (affd., 167 N. Y. 588), pp. 391, 392, applies to
this case.

The evidence shows conclusively that the will was
executed with all the formalities required by the stat-
ute, and there is no sufficient evidence of undue

influence to justify the submission of that question to the jury. Undue influence must be established by showing the facts and circumstances justifying the inferences, and opportunity is not enough. *Children's Aid Soc.* v. *Loveridge,* 70 N. Y. 394; *Thompson* v. *Peterson,* 152 App. Div. 667, 672. A verdict in favor of the proponents should be directed.

Judgment accordingly.