In the Matter of the Probate of the Will of ALBERT C. WHITE, Deceased. NATIONAL CHAUTAUQUA COUNTY BANK et al., as Executors of ALBERT C. WHITE, Deceased, et al., Appellants; JAMES C. WHITE et al., Respondents.

Fourth Department, July 9, 1952.

*Clarence G. Pickard* for appellants.

*Alton R. Erickson* for James C. White, respondent.

*W. Travis Look* for Thomas C. White, Katherine W. Geracimos and Jane White, respondents.

WHEELER, J. Albert White, aged seventy-seven, died testate on July 6, 1949, possessed of assets worth approximately $28,000. He left him surviving only one brother, James C. White, and a nephew and a niece, children of a deceased brother, all of whom are contestants. The Surrogate to whom petition was made for probate of the purported last will and testament of Albert C. White referred the objections of the contestants

to the Supreme Court for trial by jury. The jury returned a verdict establishing that the will was properly executed and witnessed, but that the testator was not of sound mind when he executed the will, that he was not free from restraint, and that the paper had been procured by fraud, deceit or undue influence.

The will offered for probate, dated April 25, 1949, was the third will executed by the testator in a period of a little more than eight months. The will here attacked gives $2,000 to James C. White, $5,000 to Ethel C. White, the wife of James, $10,000 to Margaret Quaintance, and the residue to the testator's niece and nephew, the contestants Katherine Geracimos and Thomas C. White.

The underlying cause for the objections to the will is apparent when it is learned that Mrs. Quaintance, who has been devised $10,000, had been known to the testator only since August of 1948, when he took up board and room at the home of this lady and her husband. The contestants quite obviously entertain the notion that this favored legatee exercised an undue influence over the testator — the ease with which this unconscionable persuasion was accomplished, it is heavily implied, being due to decedent's purported progressive physical and mental degeneration. It seems unnecessary to review at length the evidence set out in the voluminous record. As regards the use of undue influence, we find a dearth of evidence which would have justified a verdict for the contestants upon this issue. Aside from the innuendo that Mrs. Quaintance, by virtue of her opportunity to do so, improperly influenced the testator, there is little, if any, evidence, even though the testimony of the contestants is given full credence, that the subject will was not completely voluntary upon his part.

There is, of course, the question of competency of the testator in weighing the evidence offered to prove undue influence. The condition of the testator is an important factor in measuring his susceptibility to improper persuasion. (*Matter of Streb,* 247 App. Div. 556.) The contestants have apparently recognized this factor, realizing the weakness of their evidence regarding undue influence, and have stressed the alleged weakened and feeble condition of the testator in order to lower the threshold for acceptance of the low grade proof of Mrs. Quaintance's alleged improper inducement.

As regards the issue of the testator's sound and disposing mind and memory, the record reveals very little evidence of probative value offered by the contestants. The execution of

three or four powers of attorney and three wills within an eight to nine month period does not, in itself, indicate an unsound mind or a vacillating character susceptible to persuasion, nor is it true in the case of this testator. The execution of a person's first will could scarcely be characterized as exhibiting instability. The first will of this testator was signed on August 16, 1948 and the second will was not executed until March 26, 1949; the paper offered for probate in the instant proceeding was executed on April 25, 1949. The record is not barren of sound reasons for these changes.

The testimony of the proponents' witnesses indicated that at the time the will was executed the demeanor of the testator measured up to the standards set forth long ago in *Delafield* v. *Parish* (25 N. Y. 9) and reiterated in nearly all the reported decisions since that time. (See, also, *Matter of Snelling,* 136 N. Y. 515; *Matter of Heaton,* 224 N. Y. 22, and *Ivison* v. *Ivison,* 80 App. Div. 599.) The testator's personal physician, who attended him the last ten months of his life, testified that he had examined Mr. White a short time before the will in question was executed and again a few days thereafter, and had noted that the testator's "mental condition was good."

The evidence offered by the contestants to contravene the proponents' proof consisted of many incidents in the testator's later years which need not be here enumerated or detailed. Most of these incidents, and all of the decedent's habits testified to by the contestants were tendered, it is presumed, to demonstrate his lack of sound mind, although not one of the witnesses testified as to the impression these incidents made upon the witness. Nevertheless, the recital of these incidents describes, for the most part, the not unusual habits and transactions of an older person who becomes forgetful of everyday trivia and at times exhibits fickleness in regard to many things. Even fickleness with regard to testamentary disposition is not of itself an indication of unsoundness — as that may be either explained by the particular circumstances or simply a manifestation of the general character trait.

However, of greater importance in the failure of contestants' proof is the omission of any medical testimony whatsoever, even the opinion of an expert founded upon a hypothetical state of facts, as well as the failure of each of the witnesses for the contestants to testify whether or not the acts of the decedent about which he or she testified impressed the witness as being irrational. (*Matter of Case,* 214 N. Y. 199, 202.)

We should not lightly brush aside a solemn testamentary document upon evidence which discloses only that the testator was growing old and had developed the normal idiosyncrasies associated with that process.

Improper admission of evidence, contrary to the provisions of section 347 of the Civil Practice Act would, in any event, require a new trial. Over the proponents' objection, testimony of James White as to transactions with the decedent was admitted in contravention of the statute, upon the theory that the door had been opened by the proponents. While the door may have been opened to a certain extent, we do not feel that the proponents let down the bars to all that James testified to. Further, the facts relating to the institution by brother James of incompetency proceedings, which were never brought to a conclusion, should not have been before the jury, and the extended colloquy between court and counsel on that subject in the presence of the jury was prejudicial.

The decree and order appealed from should be reversed on the law and the facts and a new trial ordered.

All concur, except TAYLOR, P. J., who dissents and votes for affirmance. Present — TAYLOR, P. J., McCURN, KIMBALL, PIPER, and WHEELER, JJ.

Decree and order reversed on the law and facts and a new trial granted, with costs to the appellants to abide the event.