## COMMONWEALTH *vs.* JAMES WILSON.

On the trial of a criminal case, when the defence relied on is the insanity of the defendant, neither books of established reputation on the subject of insanity, whether written by medical men or lawyers, nor statistics of the increase of insanity as stated by the court or counsel on the trial of another case, can be read to the jury.

A witness, not an expert, who has testified to the appearance and conversation, at certain interviews, of a person whose insanity is sought to be established, cannot be asked what opinion he formed, at the time of those interviews, of that person's mental condition.

On the trial of an indictment for murder, when the defence relied on is that the homicide was committed by the defendant under an insane delusion that the deceased and others were engaged in a conspiracy against him, expressions of hostile feelings towards the defendant, made by the deceased, though not shown to have been made in the defendant's presence, nor to have come to his knowledge, are admissible in evidence, to show the state of mind of the deceased towards the defendant at that time, and as thus tending to show some real ground for the defendant's feeling toward the deceased.

A witness, who has been asked on cross examination when he was first inquired of by any one concerning the facts to which he has testified in chief, may be asked on reëxamination whether he had previously communicated the same facts to other persons.

THE defendant was indicted for the murder of William Adams on the 19th of July 1853. Trial before the chief justice and Justices Metcalf and Bigelow, on the 24th of May 1854.

The evidence was full and uncontradicted that the defendant, at the time alleged in the indictment, was a prisoner in the state prison at Charlestown, and then and there killed Adams, one of the other prisoners, by stabbing him in the neck with a knife. The sole ground on which the defendant's counsel placed his defence was, that he committed the homicide under an insane delusion that Adams and others of the prisoners were engaged in a conspiracy against him.

*P. H. Sears,* in opening the case for the defendant, proposed to read to the jury definitions of insanity from works of established reputation on the subject; and contended that books written by lawyers were admissible, even if the court should hold, that the treatises of medical writers were not. And he referred, for instances in which such works had been permitted to be read to the jury, to Rogers's Trial, 48, 76, 79, 80; *Regina* v. *M'Naughton,* 1 Townsend's State Trials, 357, 358; *Regina* v. *Oxford,* 9 Car. & P. 531, 532. He also proposed, in order to call the attention of the jury to the recent increase of insanity in this country, to read the statistics referred to by the counsel for the defendant, in Rogers's Trial, 48; and by Parker, C. J. of New Hampshire, in a charge to the grand jury, 20 Amer. Jurist, 456.

SHAW, C. J. Facts or opinions on the subject of insanity, as on any other subject, cannot be laid before the jury except by the testimony under oath of persons skilled in such matters. Whether stated in the language of the court or of the counsel in a former case, or cited from the works of legal or medical writers, they are still statements of fact, and must be proved on oath. The opinion of a lawyer on such a question of fact is entitled to no more weight than that of any other person, not an expert. The principles governing the admissibility of such evidence have been fully considered by this court since the tria

of Rogers; and the more recent English authorities are against the admission of such evidence. See *Collier* v. *Simpson*, 5 Car. & P. 74; *Cocks* v. *Purday*, 2 Car. & Kirw. 270; 1 Greenl. Ev. § 440, *note.*

James G. Fuller, formerly chairman of the board of inspectors of the state prison, called as a witness for the defence, testified to having had certain interviews with the defendant before the homicide, and to his appearance and conversation at those interviews. The defendant's counsel then proposed to ask the witness what opinion of the prisoner's mental condition he formed at the time of those conversations.

*J. H. Clifford*, (Attorney General,) objected. *E. Merwin*, for the defendant, contended that any witness might state facts occurring within his own knowledge, and the impression made on him at the time by those facts; and cited *De Witt* v. *Barley*, 13 Barb. 550; *Hathorne* v. *King*, 8 Mass. 371.

SHAW, C. J. Subscribing witnesses to a will, being the witnesses chosen by the testator, are allowed to state their opinion as to his sanity. But other witnesses, not experts, are not permitted to state their opinion, even if they first state the facts and circumstances on which it is founded. This distinction has been long established in this commonwealth, and uniformly adhered to. See *Poole* v. *Richardson*, 3 Mass. 330; *Needham* v. *Ide*, 5 Pick. 510.

John B. Rice, one of the prisoners in the state prison, called as a witness by the Commonwealth, testified to quarrels between the defendant and Adams some time before the homicide, and was asked by the attorney general whether he had ever heard Adams express any hostile feelings towards the defendant.

*Merwin* objected that such declarations of Adams were inadmissible, unless shown to have been made in the defendant's presence, or to have come to his knowledge.

SHAW, C. J. The theory of the defence being that there was no ground for the defendant's belief of Adams's hostility towards him, the declarations of Adams are admissible to show his state

of mind towards the defendant at that time, and as thus tending to show some real ground for the defendant's feelings towards Adams.

John Goodcourage, also a prisoner, called as a witness for the Commonwealth, testified to certain facts tending to show that the homicide was premeditated by the defendant; and was asked, on cross examination, when he was first inquired of by any one, concerning the facts to which he had testified in chief; to which he answered, " about six weeks before." On reëxamination the attorney general asked him whether he had communicated the same facts to other persons at or about the time of the homicide. *Merwin* objected that the question could not be put for the purpose of strengthening the testimony of the witness, and referred to *Deshon* v. *Merchants Ins. Co.* 11 Met. 199, 209.

SHAW, C. J.⁻ The rule excluding such testimony is confined to the examination in chief, and does not apply to a case where the other party has sought to impeach the witness on cross examination. The purpose of the cross examination in this particular having been to impeach the witness, the question may be put.

*Verdict, guilty.*