(73 Misc. Rep. 481.)

### In re TOWNSEND'S ESTATE.

#### (Surrogate's Court, Cattaraugus County. September, 1911.)

1. WILLS (§ 38*)—CAPACITY OF TESTATOR—INSANE DELUSION.

A testator who revoked a gift to the wife of a brother is not shown to have acted under an insane delusion merely because he for some time entertained a pronounced aversion for his brother's wife, and believed that she dominated her husband, and had already succeeded or was attempting to secure title in her own name to her husband's property, the testator having had opportunity from personal intercourse with his brother's wife to form an intelligent estimate of her inclinations and characteristics, though what particular things in her conduct aroused his dislike are not set out in the testimony.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 78–81; Dec. Dig. § 38.*]

2. TRUSTS (§ 160*)—DESIGNATION OF TRUSTEE—APPOINTMENT BY COURT.

While a devise in trust for the use of testator's brother for life, with authority to the trustee to apply the principal to the use of the beneficiary if in the judgment of the trustee the beneficiary requires it, with remainder to the trustee absolutely, is valid as to the creation of the trust, another trustee should be appointed, after letters testamentary have been issued to the executor and the amount of the trust estate is determined by judicial settlement of his accounts, to manage the trust estate during the beneficiary's life.

[Ed. Note.—For other cases, see Trusts, Dec. Dig. § 160.*]

In the Matter of the Estate of William A. Townsend, Deceased. Proceedings upon probate of will and codicil. Decree entered.

Hastings & Larkin, for proponent.
Dana L. Jewell, for contestant.

DAVIE, S. William A. Townsend, a resident of the town of Olean, died May 22, 1911, leaving him surviving no widow or descendants. His heirs at law and next of kin are two brothers, Zachariah and Stanley, and one nephew, Henry, the son of a deceased brother. He died possessed of real estate of the value of $11,000 and personal property, $13,000. He left a will bearing date July 6, 1906, and a codicil thereto dated May 16, 1911. By the terms of his original will, he made provision for the erection of a monument at his grave at an expense of $500, gave $300 to an adopted daughter, and devised and bequeathed the residue of his estate, real and personal, to his two brothers and to the widow of a deceased brother, share and share alike. The fifth item of the will is as follows:

"In the event of the death of my brother Stanley C. Townsend prior to my decease, then I will and direct that the share or portion bequeathed to him shall be divided equally between my brother, Z. A. Townsend, and my brother's widow, Mrs. Mittie Townsend."

The sixth item of the will is as follows:

"In the event of the death of my brother Z. A. Townsend prior to my decease, then I give, devise and bequeath to his son, Harry Townsend, the share or portion of my estate which my said brother would take had he been living."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The seventh item of the will is as follows:

"In the event of the death of my sister-in-law, Mrs. Mittie Townsend, prior to my decease, then I give, devise and bequeath to her son, Henry Townsend, the share or portion of my estate which my said sister-in-law would have taken had she been living."

The brother Zachariah was named as executor and given power to sell and convey the real estate.

By the first paragraph of the codicil a bequest of $200 is made to Dr. Hibbard, and declared to be justly due him for services rendered for which no charge had been made. The second paragraph of the codicil is as follows:

"I desire to, and do hereby change the fourth paragraph of my said will so that it shall read as follows: All the rest, residue and remainder of my estate, both real and personal, of every kind, nature and description I give, devise and bequeath equally, one-third to my brother Stanley C. Townsend of Lancaster, Ohio, one-third to Mrs. Mittie Townsend, widow of my deceased brother, J. E. Townsend of Bridgton, New Jersey; and one-third to my nephew Henry Townsend of Bridgton, New Jersey; the share and third hereby devised and bequeathed to my said nephew Henry Townsend is in trust however for the following uses and purposes: to keep the same invested and to pay over the income therefrom at least annually to my brother Z. A. Townsend of Tuckahoe, New Jersey, during the term of his natural life and if, in the judgment of my said nephew my said brother shall require any part of said principal sum so devised and bequeathed in trust for his comfort and support during his lifetime, I direct my said trustee to pay the same over to him at such time and in such amounts as in his judgment is proper."

The third item of the codicil provides that:

"Upon the death of my said brother, Z. A. Townsend, I give and devise and bequeath the remainder of the sum herein devised and bequeathed to my said nephew Henry Townsend in trust, to my said nephew Henry Townsend absolutely."

The nephew, Henry, is named as executor in place of the brother Zachariah; and the provisions of the original will, except as modified by the codicil, are reaffirmed. The brother Zachariah files objections to the probate of the codicil, alleging want of testamentary capacity on part of the decedent at the time of making the same, and that the designation of the legatee and executor, Henry Townsend, was not in accordance with decedent's wishes or understanding, but that he intended and designed to name the nephew Harry instead; and also alleging illegality of that portion of the codicil which devises the one-third of the residuary estate to Henry in trust, with the remainder to Henry absolutely. There is no evidence, direct or inferential, sustaining the allegation of error in designation of Henry as beneficiary and executor in place of Harry, but the charge of lack of testamentary ability and of the illegality of the trust requires somewhat careful consideration.

[1] The evidence clearly shows that decedent during his active business career was a man of ability, industrious and economical, at times somewhat irritable, but always firm in his convictions and pronounced in his opinions. During the last year of his life he was to some extent debilitated physically by illness; his ailments having been diagnosed as cancer of the bile duct and arteriosclerosis. At the time

of the execution of the codicil, he was undoubtedly convinced that these diseases were progressive, and must eventually have a fatal termination, but did not understand that the end was as near as it proved to be. Under date of February 6, 1911, he wrote to the contestant, saying: "My doctor tells me if I will not work, and take care of myself I may live several years."

On the 16th day of May, 1911, the decedent, being then confined to his residence, sent for an attorney for the purpose of making some changes in the provisions of his original will. On the arrival of the attorney, the decedent sent to the bank for his will, and quite fully discussed the terms of the same and the alterations he desired to make with the attorney. He assigned as his reason for making the change in his former will, so far as it related to the contestant, that he did not wish the wife of the contestant to receive any of his property. The codicil was prepared, read over to the decedent, fully approved by him, and thereupon duly executed; all the formalities of the statute being carefully complied with. The two attesting witnesses, one of whom is the attorney who prepared the codicil and the other a physician, are pronounced and unequivocal in their expression of his mental condition at the time. All the details of this transaction are fully established by the evidence, and show beyond question that decedent had a full and clear understanding of the same. He was intelligent in his conversation, remembered the place of deposit of his original will, possessed a well-defined intention as to the changes he desired to effect by the codicil. But it is asserted by the contestant that the making of the codicil was the result of an insane delusion on the part of the decedent regarding the wife of the contestant. It is entirely evident that the decedent had for some time entertained a pronounced aversion toward her. Just when or how this feeling originated does not appear. He was thoroughly impressed with the belief that she dominated her husband, and that she had already succeeded or was attempting to secure title in her own name to the husband's property. Decedent was well acquainted with the wife, and had an opportunity, from his personal intercourse with her, to form an intelligent estimate of her inclinations and characteristics. The particular things in her conduct which engendered his dislike are not detailed in the testimony, yet it is certain that, from his observation of her, he had come to the conclusion that none of his property should directly or indirectly go to her. This conclusion may have been an unreasonable one, doing injustice to the woman. Another, with the same opportunities of observation, might have formed a different estimate of her. The most favorable construction which can be placed upon the situation, in favor of the contestant, is that decedent's aversion toward his brother's wife was intense. It was based upon his personal acquaintance with her. It was unreasonable, and it was operative to some extent in producing the changes in decedent's testamentary provisions for the contestant. All this falls far short of establishing the existence of an insane delusion on the part of the decedent, depriving him of testamentary capacity. It is a matter of common observation that the likes and dislikes of persons entirely

sane toward those with whom they associate are often unreasonable and not easily accounted for, yet they are by no means insane delusions.

In Seaman's Friend Society v. Hopper, 33 N. Y. 624, courts are cautioned against confounding perverse opinions and unreasonable prejudices with mental alienation. An instructive and controlling case, bearing directly upon the situation, is Matter of White, 121 N. Y. 406–413, 24 N. E. 935, 937. In that case the court says:

"Delusion is insanity, where one persistently believes supposed facts, which have no real existence, except in his perverted imagination, and against all evidence and probability, and conducts himself, however logically, upon the assumption of their existence. * * * But, if there are facts, however insufficient they may in reality be, from which a prejudiced, or a narrow, or bigoted mind might derive a peculiar idea, or belief, it cannot be said that the mind is diseased in that respect. The belief may be illogical or preposterous, but it is not, therefore, evidence of insanity in the person. Persons do not always reason logically, or correctly, from facts, and that may be because of their prejudice, or of the perversity, or peculiar construction of their minds. Wills, however, do not depend for their validity upon the testator's ability to reason logically, or upon his freedom from prejudice."

A testamentary provision for the disposition of property is not invalid because it is unjust, or the result of passion, or of unworthy or unjustifiable sentiment. The testator may have received some unjustifiable impressions which have actuated him in making his will but afford no evidence of the existence of insane delusions. Dobie v. Armstrong, 160 N. Y. 584, 55 N. E. 302. A testator may—

"use his will for displaying kind or vindictive sentiment, may indulge, if he choose, his whims, spite, vanity, or egotism or his animosities to the top of his bent. If he is not deficient in mental capacity and is observant of the forms which have been established by law for the execution of the testamentary instrument, his wishes must be respected by the courts at least to the extent of adjudging that they may be made effective." Hagan v. Yates, 1 Dem. 584, 596.

If a reason is satisfactory to the testator, however inadequate it may seem to the court, it is no ground of itself for setting aside the will. Horn v. Pullman, 72 N. Y. 269; Matter of Lang, 9 Misc. Rep. 521, 30 N. Y. Supp. 388; Fricke's Will, 19 N. Y. Supp. 315.[1]

The reasons asserted by the contestant in this case are insufficient to defeat probate of the codicil. The same will, accordingly, be admitted to probate in connection with the original will of the decedent.

[2] The trust created by the codicil for the support and maintenance of the brother of decedent during his lifetime is a legal and commendable one, but his selection of trustee is unfortunate. In Rathbone v. Hooney, 58 N. Y. 463, S. died seised of certain real estate, leaving a will by which she devised the same to P. in trust to receive the rents and profits and apply the same to the benefit of R. during her lifetime, with the remainder to P. in fee. The court sustained this trust and the designation of the trustee. That case, however, differs very materially in principle from the one now under consideration. There the trustee was clothed with no discretion.

---

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 64 Hun, 639.

The line of demarcation between the interests of the cestui que trust and the remainderman was clearly defined by the instrument creating the trust. Here it is entirely apparent that the income derived from the one-third of the residue may not be sufficient to comfortably support and maintain the beneficiary during his lifetime, and, in consequence, resort to the principal may become necessary. The more of the principal which may in this manner be exhausted, the smaller the interest passing to the remainderman. He is given, by the terms of the codicil, a discretion as to how much of the principal shall be used for that purpose. In that particular his interests and those of the cestui que trust are absolutely antagonistic. The trustee not only occupies a dual capacity, but in the performance of the duties of his trust his personal interests conflict directly with the rights and interests of the beneficiary.

Chaplin on Express Trusts and Powers, § 142, says: "The creator of a trust may also grant or devise a remainder to a trustee, limited on the trust." But the only authority cited in support of that proposition is the case of Rathbone v. Hooney, supra, which as already indicated is clearly distinguishable from the trust created by the codicil in this case. The courts have also recognized the legality of certain trusts where the trustee occupied a dual capacity. Martin v. Pine, 79 Hun, 426, 29 N. Y. Supp. 995; Howland v. Clendenin, 134 N. Y. 305, 310, 31 N. E. 977; Raymond v. Rochester Trust Co., 75 Hun, 239, 27 N. Y. Supp. 1; Asche v. Asche, 113 N. Y. 232, 21 N. E. 70; Warner v. Durant, 76 N. Y. 133; Mott v. Ackerman, 92 N. Y. 539.

But an examination of these authorities will fail to show any such situation of absolute antagonism between the interests of the trustee and the cestui que trust as exists in this case. Perry on Trusts, § 39, cites approvingly the rule laid down by Sir George J. Turner, L. J., as follows:

"A third rule which may be safely laid down is that the court, in appointing a trustee, will have regard to the question whether his appointment will promote or impede the execution of the trust; for the very purpose of the appointment is that the trust may be better carried into execution."

In view of the complications which are very likely to arise in case the trustee designated by the terms of the codicil enters upon the discharge of his duties as such trustee, I am of the opinion that the ordinary letters testamentary should issue to him as executor, and, after the amount of the trust estate is established by his judicial settlement as executor, another trustee should be appointed for the purpose of managing and controlling the trust estate during the life of the beneficiary.

Decreed accordingly.