(90 Misc. Rep. 266)

### In re STOLL'S WILL.

(Surrogate's Court, Kings County.    April 16, 1915.)

1. WILLS ⬥53—CONTEST—ADMISSIBILITY OF EVIDENCE—DELUSION—FOUNDA- TION.

 Where the contestant of a will proved declarations by the testator indicating a belief that his wife was unchaste, evidence by the proponent that she had become intoxicated on several occasions has no tendency to prove that the testator's belief was well founded, and is inadmissible for that purpose.

 [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 111, 112, 120–130; Dec. Dig. ⬥53.]

2. WILLS ⬥53—CONTEST—ADMISSIBILITY OF EVIDENCE—DELUSION—FOUNDA- TION.

 Even if the evidence had such tendency, it was inadmissible, where there was no evidence to show that testator knew of such intoxication, and proponent's counsel admitted that he had no such evidence to offer.

 [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 111, 112, 120–130; Dec. Dig. ⬥53.]

Proceedings to contest the last will and testament of Henry Stoll, deceased. On motion by the proponent for a new trial after verdict for the contestant. Motion denied.

James Crooke McLeer, of Brooklyn (Almet Reed Latson, of New York City, of counsel), for proponent.

Lind & Pfeiffer, of New York City (Alfred D. Lind and Alexander Pfeiffer, both of New York City, of counsel), for contestant.

KETCHAM, S. The decedent left him surviving his wife and the son of a former wife. His will is wholly in favor of the son, and is contested by the widow upon the familiar allegations.

The jury has found, among other things, that the testator was with-

out testamentary capacity; and the proponent, the son, moves for a new trial upon grounds which were adversely disposed of on the argument, except that one assignment of error was reserved for the present discussion.

[1] Proof was made by the contestant of declarations of the testator which both in express and topical form tended to show that he believed that his wife was unchaste. No direct evidence was given as to whether the testator had any basis or justification for this belief.

When the will was made, the testator and his wife had by agreement lived apart for years, the husband in New York City, and the wife in Albany. In rebuttal questions were asked by the proponent, which, with the answers thereto, were as follows:

"Q. Did you ever see Mrs. Stoll under the influence of liquor? A. I did. Q. Where and when? A. At her own home."

After the taking of these answers, an objection made thereto was sustained, under exception. No motion was made that the testimony be stricken out. Another witness was then asked whether she had ever seen the wife intoxicated. Objection to this question was sustained, and exception was taken to the ruling. Before the disposition of this objection, counsel for the proponent disclaimed that he was about to show that what had been the behavior of the wife was known to the husband. There was no evidence tending to prove that the testator had at any time become either actually or constructively aware of any intoxication upon the part of his wife, or that the testator expressed or maintained a belief, sane or insane, that his wife was given to intoxication or was ever intoxicated.

The only claim by the contestant as to the testator's insanity on the subject of his wife was that he declared a belief in her unchastity, and that there was evidence tending to show that such belief was unfounded and irrational.

It is apparent that instances of drunkenness of the wife, without any circumstance to indicate that her condition was the cause or concomitant of a grosser fault, would not save the belief as to her virtue from the likeness of delusion, even if the fact of mere intoxication were shown to have come to the knowledge of the testator. Indeed, a jury might well determine that it was insanity on the part of the decedent to regard acts of drunkenness as a basis for the conclusion that the drunken person was unchaste.

[2] Moreover, the proposed testimony would seem to be forbidden by the absence of any evidence that the inebriety which the proponent sought to show came to the testator's attention and by the avowal that no such evidence was within the proponent's command. The court remains persuaded that it is impossible to test the state of a man's mind by a fact which never approached his mind. To measure a consciousness by something of which it was never conscious would require from the court more than an acquaintance with insanity; it would involve a personal intimacy.

There are cases, entirely foreign to the present question, where the fact as to which the subject has formed a belief may be shown without express proof that it became known to him. Where the belief has been

indulged notwithstanding facts which occurred in the home or the community of the believer, or under other conditions which would give rise to the presumption that he knew that which was generally known, the presumption is itself evidence tending to show his knowledge, and the existence of the facts may well be shown without proof, other than the presumption, that they came to his attention. If the belief was extravagant, contrary to human experience or forbidden by recognized physical laws, the facts which would tend to show that it was irrational are presumed to have been known to the person entertaining the belief, and neither the fact nor the knowledge thereof need be shown otherwise than by the presumption. In none of these cases have the courts suggested that facts unknown to the person whose mind is under observation may be regarded in determining the state of his mind. On the contrary, these instances, and the rule which they have provoked, support rather than defeat the proposition that nothing which is not shown to have been apprehended by the mind in question can be used as a standard for its analysis.

Any presumption in this case that the testator became aware of the matters offered in evidence is excluded by the proven circumstances; and it is confessed that there is nothing directly tending to show his acquaintance with his wife's conduct or habits with respect to drunkenness. Neither by demonstration nor inference is it shown that any of the transactions which are alleged as a just measure of his mental state came within his apprehension. If it be conceded for a moment that drunkenness alone has anything to do with unchastity, the question at bar is reduced to these terms: Can proof of an external fact be used to determine that a belief in its existence was sane, when it must be found upon all the evidence that the belief was conceived and maintained without knowledge, either actual or constructive, as to the facts? If this may be answered in the affirmative, medical science will be afforded novel resources, both of diagnosis and of therapeutics. Of course, a fact of which the patient is unaware becomes at once a symptom of his disorder, and hope is inspired that the condition will be palliated, if not cured, by the removal of the thing which causes and demonstrates the malady. There will then be judicial assurance to a suspected wife that, if she will debase herself with drink, her sacrifice will establish her husband's reason. She will find herself under the dread burden of regulating his mental condition from day to day according to the scope of her devotion and her endurance. It will, of course, result that the suffering husband will oscillate between sanity and insanity just as his belief does or does not conform to the alternations of sobriety and drunkenness which his fellow sufferer may maintain, but always with the serene incentive to the wife that if, without his knowledge, she is able to sustain a perennial inebriety, he will be redeemed to permanent health.

Definition taken from the opinions of judges are cited in support of the contention that a belief is sane or insane according to its correspondence with the actual fact, even though the fact is not shown by presumption or primary proof to have come to the knowledge of the believer. These definitions are detached from the setting of fact to which they were confined, and in many instances from their qualifying

context. In some cases cited by the proponent this meaning is imposed upon opinions which have dealt only with the truth or untruth of the subject's belief as to matters directly affecting his own person or presence and necessarily open to his knowledge. Dobie v. Armstrong, 160 N. Y. 584, 55 N. E. 302; Matter of White, 121 N. Y. 406, 24 N. E. 935; American Seamen's Friend Society v. Hopper, 33 N. Y. 619; Matter of Townsend, 73 Misc. Rep. 481, 133 N. Y. Supp. 492; Matter of Hoyt, 9 N. Y. St. Rep. 731. In each of these cases the court expressly rested its reasoning upon the fact that circumstances offered in evidence to show the error of the belief were within the observation of the believer. Seamen's Friend Society v. Hopper, supra, 33 N. Y. at page 625; Matter of White, supra, 121 N. Y. at pages 413 and 414; Dobie v. Armstrong, supra, 160 N. Y. at pages 590, 592, and 593; Matter of Townsend, supra, 73 Misc. Rep. at page 485, 133 N. Y. Supp. 492; Hoyt v. Hoyt, supra, 9 N. Y. St. Rep. at pages 744 et seq.

Two cases are found by the proponent in which his position is asserted: Stevens v. Leonard's Executors, 154 Ind. 67, 56 N. E. 27, 77 Am. St. Rep. 446, and Odell v. Goff, 153 Mich. 643, 117 N. W. 59. To them may be added Burkhart v. Gladish, 123 Ind. 337, 346, 24 N. E. 118, and Commonwealth v. Wilson (1 Gray) 67 Mass. 337.

None of these decisions are of controlling authority, and they exhibit no reasoning which compels acceptance. No trace has been found in the judicial writings of this state of the adoption of their conclusions or of any equivalent statement, while their doctrine has been resolutely rejected in many cases which, though they did not touch insanity, are nevertheless concerned with the mental state.

What difference does it make whether the testimony is offered to show mental equilibrium or any other mental condition? Can it be possible that one rule applies if the mind is searched for malice, fear, excitement, or other emotion, and still another when the endeavor is to see if a belief is sound and rational? Is not the problem, as well as the process, the same, whenever a litigant would resort to the objective fact to determine any condition or operation of the thinking self?

It is the law of New York, well defined and uniformly applied to many phases of consciousness, that no fact can be shown for the purpose of characterizing or revealing a mental state, unless it be the naked fact of knowledge itself on the part of the person whose mental attitude is in question. Thus, in cases where the motive for homicide is the issue, declarations to the accused are held to be admissible to show the frame of mind in which he approached his act, but the truth of the declaration is excluded, obviously upon the theory, for no other will serve, that the fact to which the declarations were directed could not have been influential upon his mind, if unknown to him.

This deeply settled rule was not made solely for murder cases, nor has it any reason for existence which does not require its application to all inquiries as to the state of movement of a mind. If it be accepted as comprehensive, the teaching of the four cases cited from other states can find no lodgment in this commonwealth, and the evidence considered supra was properly rejected.

The motion is denied.