(82 Misc. Rep. 500.)

### PHILLIPS v. FLAGLER et al.

(Supreme Court, Equity Term, Niagara County. November 1, 1913.)

1. WILLS (§ 222*)—SETTING ASIDE—JURISDICTION OF EQUITY.

Equity has jurisdiction of an action to set aside a will as the result of undue influence, where the land devised has been deeded by the testator to another than the devisee, and such other was in possession under the deed, so that an action of ejectment would not lie.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 542–544; Dec. Dig. § 222.*]

2. ACTION (§ 38*)—MISJOINDER.

A complaint, alleging that defendant F. exercised an undue influence over decedent when he was mentally incompetent to induce him to execute deeds to herself and devise the land to her relatives, who were also made defendants, for her own benefit, alleged a single cause of action in equity to determine and enforce plaintiff's rights to the realty.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 217–220; Dec. Dig. § 38.*]

3. WILLS (§ 38*)—CAPACITY—"DELUSIONS."

An unjustifiable impression held by decedent regarding his son, even though a mistake in judgment, was not necessarily a delusion; mistakes in judgment not being "delusions."

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 78–81; Dec. Dig. § 38.*]

4. WILLS (§ 47*)—MENTAL COMPETENCY.

Old age, and mental and physical infirmities resulting therefrom, do not make one incompetent to execute a will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 94; Dec. Dig. § 47.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexs

5. DEEDS (§ 211*)—VALIDITY—SUFFICIENCY OF EVIDENCE—MENTAL COMPE-
TENCY.
Evidence *held* not to show that a grantor was mentally incompetent
when he executed a deed.
[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 637–647; Dec. Dig.
§ 211.*]

6. WILLS (§ 55*)—SUFFICIENCY OF EVIDENCE—VALIDITY.
Evidence *held* not to show that the testator was mentally incompetent
when he executed a will.
[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 137–158, 161; Dec.
Dig. § 55.*]

7. WILLS (§ 50*)—MENTALLY COMPETENT—TEST—"TESTAMENTARY CAPACITY."
The test whether testator was competent to execute a will is whether
his mind was capable of understanding the nature and disposition of his
property and his relations to his relatives and the persons to whom he
devised it.
[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 96–100; Dec. Dig.
§ 50.*
For other definitions, see Words and Phrases, vol. 8, pp. 6929–6931.]

Action by William E. Phillips against Lydia C. Flagler and others.
Complaint dismissed.

S. W. Dempsey, of Lockport, for plaintiff.
David Tice, of Lockport, for defendants Flagler.
F. D. Moyer, of Lockport, for defendant Phillips.

POUND, J. This action is brought to set aside a deed made by
Hiram A. Phillips on September 5, 1905, an unprobated will executed
by him on July 11, 1908, and a deed made by him on July 15, 1908, on
the grounds of mental incompetency and undue influence.

The deed of September 5, 1905, conveys a house and lot on Cal-
edonia street in the city of Lockport to the defendant Lydia C. Flag-
ler. The premises were worth about $1,200. The grantee, at the time
the deed was executed, gave back a life lease thereof to the grantor.

The will gives $500 to Frank C. Phillips, $1 to the plaintiff, his son
and only heir at law and next of kin, and the remainder of his estate
to Emory Flagler, husband of said Lydia C. Flagler, in case he sur-
vives testator, otherwise to his heirs. At the time of making the will,
Hiram A. Phillips owned the East avenue house and lot, subsequently
conveyed; also, some household furniture and several hundred dollars
in bank. This will was the last of several executed by Hiram A.
Phillips and revoked each by a later will. The circumstances of its
execution are testified to by a reputable attorney as being regular and
legal in all respects.

The deed of July 15, 1908, conveys the East avenue house and lot,
worth about $2,500, to said Lydia C. Flagler and her husband, Emory
Flagler, as tenants by the entirety, reserving to the grantor the life
use thereof and charging it with the payment of the Frank C. Phillips
legacy of $500. The deed was drawn by an attorney other than the
one who prepared the will.

Hiram A. Phillips died on September 19, 1911, in the ninety-fifth

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

year of his age. Emory Flagler had died before that date, leaving the defendants Belva Flagler and Roy Flagler, his children and only heirs.

It is urged that the complaint should be dismissed so far as it relates to the will, because a cause of action to set aside the will is improperly joined with causes of action to set aside the deeds, which deeds do not affect the defendants Belva Flagler and Roy Flagler, and also because it does not state facts sufficient to constitute a cause of action to set aside the will for the reason that this court has no original jurisdiction to probate a will nor declare an unprobated will void. Code Civ. Proc. §§ 484, 488, 498; Anderson v. Anderson, 112 N. Y. 104, 19 N. E. 427, 2 L. R. A. 175.

[1] But the defendant Lydia C. Flagler is in possession of the real estate under the deeds, so plaintiff has not the remedy at law by an action of ejectment which he might have if the devisees, the defendants Belva and Roy, were in possession.

The usual objection to an original action in the Supreme Court to set aside a will of real estate on the ground of testator's incompetency is that there is a perfect remedy at law. But the existence of the two deeds above mentioned presents such an impediment to an action at law as to give jurisdiction to a court of equity. Kalish v. Kalish, 166 N. Y. 368, 59 N. E. 917.

[2] The gist of plaintiff's action is that the defendant Lydia C. Flagler exercised an influence and control over deceased when he was mentally incompetent and thereby induced him to execute the deeds and the will for the benefit of herself, her husband, and her children. The complaint states a single cause of action in equity to determine and enforce the rights of the plaintiff to the real property formerly owned by Hiram A. Phillips, which is the subject of the action. Porter v. International Bridge Co., 163 N. Y. 79, 57 N. E. 174.

The question is first as to the mental capacity of Hiram A. Phillips to make the deeds and the will in question, and, second, as to his freedom from undue influence in making them.

[3, 4] Phillips was born on June 18, 1817. He was 88 years of age when he made the first deed and 91 years of age when he executed the will and the second deed. He was in an enfeebled condition of body and mind. The sole provision made by him for his only child was the legacy of $1. He seemed to have some unjustifiable impressions about his son, but mistaken judgments are not delusions, nor are old age and mental and physical infirmity disqualifications. Dobie v. Armstrong, 160 N. Y. 584, 55 N. E. 302.

[5, 6] It must be conceded that, on the one hand, he attended personally to his simple matters of business, like paying taxes and bills and keeping accounts, down almost to the time of his death at the age of 94, three years after the second deed was executed, and that, on the other hand, he was of failing memory, peculiar, childish about trifles, and suspicious of his neighbors without cause. While he was very old and had lost much of his mental vigor, he was by no means wholly non compos mentis.

Did Hiram A. Phillips know what he was about? Had he a sane reason, though a poor one perhaps, for making no provision for his

son? Did he act freely, under proper influence only, without coercion or duress? A brief history of his relations with his son and with the Flaglers will be helpful in reaching a poper conclusion.

In the year 1895 we find the plaintiff bringing suit against his father in the Supreme Court and, after a contested litigation, obtaining judgment against him that plaintiff was, by virtue of a contract to support his father for life, made in the year 1891, entitled to a 100-acre farm in the town of Royalton, formerly owned by his father. As the learned court found in favor of the plaintiff, it follows that Hiram A. Phillips was in the wrong and to blame for the litigation. But the son regarded the father as mentally competent in 1895, and it must be assumed that Hiram A. Phillips was then able to look after himself and his affairs and that he naturally and normally felt that he was in the right and that his son was in the wrong about the lawsuit. Thus the natural affection of the father for the son was ever afterwards clouded by the memory of this controversy.

In the year 1898, the plaintiff and his father entered into a contract whereby the son agreed to pay the father $65 in cash quarterly in lieu of the support to which he was entitled under the contract. Again the son deals with the father as competent to contract; probably, from his point of view, he deals not unfairly with the old man. But William E. Phillips has beaten his father in a lawsuit over the farm, and has now obligated himself to pay only $260 per annum for his father's support. No hypothesis of mental delusion is required to explain a feeling on the part of the father that the son had gotten the better of him and had been unfilial. After making the contract, the son appeared each quarter with a notary public and took an acknowledged receipt from his father for the payments. The contract provided for this, but it annoyed the father. I think it not unnatural that the father should, out of his disappointment and grief, entertain a bad opinion of the son, regard him as an enemy, and the like, although at times tolerating him, as it were, and not wholly breaking off relations with him. The relations between them after 1898 were, however, confined almost entirely to the payment and receipt of the $65 quarterly. Certainly it was no insane delusion on the part of Hiram A. Phillips that his son had sued him and, as the result of the lawsuit, had obtained title to the Royalton farm for $260 per annum for the life of a man 81 years old. I see no good reason why the son would expect to inherit from the father after that, if the father were competent to disinherit him.

The defendant Lydia C. Flagler is a woman of about 60 years of age, who was taken by Hiram A. Phillips into his home when she was about 6 years old, along with her brother and sister, orphan children named Cole. They all took the name of Phillips, and the brother and sister were brought up by him. Lydia, however, lived with him only about a year and then went to live with another family and in time married Emory Flagler. Her relations were always friendly with the old man. In 1898 she lived on Charles street in Lockport, and Hiram A. Phillips lived not far away on East avenue. From 1898 to the spring of 1911 Hiram A. Phillips boarded with her at her house, paying her the

modest sum of $2 per week for meals, washing, and mending. In the spring of 1911 she moved with her family into the East avenue house, at his request, and continued to care for him until he died in the following September. The Flaglers were closer to him than any one else; they treated him kindly, and had his confidence, and it would seem reasonable for them to expect something at his death in addition to the $2 per week paid by him for board and keep.

[7] Assuming that the mental faculties and will power of Hiram A. Phillips had deteriorated from the year 1891, when the contract with plaintiff about the farm was made, from the year 1895 when they had the lawsuit, from the year 1898, when they made the annuity contract, down to the years 1905 and 1908, the test is: Was his mind still capable of understanding the nature and disposition of his property and his relations with his son and the Flaglers? Delafield v. Parish, 25 N. Y. 9.

He seems at times to have been able to reason himself into a belief that his son had dealt fairly with him about the farm, and that the decision of the court was a just one; but his mind always goes back to the trouble between them. It was not an insane delusion on his part that they had had trouble, nor was the belief that his son had treated him badly evidence of mental incapacity. Even an unjustifiable impression is not a delusion, and the impression that his son had taken advantage of him was not wholly unjustifiable. That he had been disappointed and displeased was due perhaps to the weakness and infirmity of age, rather than to any real misconduct on the part of plaintiff; but it was not due to senile dementia. He may have forgotten many things, great or small, but he never forgot the loss of the farm in the lawsuit. In the free exercise of such intellectual powers as he possessed, he made a perfectly natural disposition of his property. Deeds and wills are not to be set aside by the courts except for the gravest reasons, especially where the result would be to take the property of a dead man from the persons to whom he has thought best to give it and to give it to the legal heir from whom the deceased had been alienated, not without cause, and who had no equitable claim on his father's bounty. Nutting v. Pell, 11 App. Div. 55, 42 N. Y. Supp. 987.

The deeds in my opinion fairly represent the wishes of the deceased. Decision dismissing complaint, with costs.